82 Cal.App.3d 483 (1978)
147 Cal. Rptr. 289
Estate of THEA RUTH HOEGLER, Deceased.
HERBERT FINK, Petitioner and Appellant,
v.
ALICE GRAHAM et al., Objectors and Respondents.
Docket No. 41347.
Court of Appeals of California, First District, Division Three.
July 6, 1978.
*485 COUNSEL
Caldecott, Peck, Phillips & Stewart and Thomas N. Stewart for Petitioner and Appellant.
Boornazian, King & Schulze, James T. Kennedy, Ropers, Majeski, Kohn, Bentley & Wagner and John M. Rubens for Objectors and Respondents.
OPINION
GOOD, J.[*]
Thea Ruth Hoegler (Ruth post) died intestate and childless in 1975. She was the only child of Joseph and Frances Hoegler, who were wed in 1913. Neither Joseph nor Frances had property or money at the time and did not thereafter acquire anything by gift, devise or descent. Joseph had two children by a prior marriage, Richard Hoegler and Alice Graham, respondents herein. Joseph died intestate in 1959. By that time substantial assets had been accumulated but with the exception of a residential property in joint tenancy, all assets were held in the individual name of one or the other spouse. Frances was appointed administratrix of Joseph's estate but inventoried only the assets which stood in his name. There was no reference to Joseph's possible community interest in assets held in Frances' name. The decree of distribution determined that the entire estate was community property and the whole thereof was distributed to Frances.
Prior to distribution, Richard filed a petition which asserted that the estate was Joseph's separate property in which he was entitled to share under Probate Code section 221 which would vest one-third in the surviving widow and divide the remainder between Joseph's children. There was an out of court settlement whereby Frances, individually, paid *486 Richard $7,000 in return for his executing a release and assignment to her of any interest which he might have or thereafter acquire in Joseph's estate. Neither Alice nor Ruth joined in Richard's petition and it does not appear that they or Richard made any demand that any community interest Joseph might have in assets standing in Frances' name should be administered in his estate.
Prior to Joseph's death, Frances had added Ruth's name as a joint tenant to two of the bank accounts held in her name. Thereafter, Frances made substantial gifts to Ruth, usually by way of joint tenancy transfers of various stocks and bank accounts. There was evidence that such gifts were made from assets which had stood in Frances' name throughout the marriage rather than from assets which she had acquired through Joseph's estate. When Ruth died, she left more than $100,000 which, except for three minor items (uncontested herein), was derived from her mother's gifts. Alice Graham was appointed administratrix of the estate.[1]
Herbert Fink, appellant herein, on behalf of his father (Frances' brother), two of Frances' sisters and two children of another deceased brother, filed a petition to determine heirship. It was alleged that, with the exceptions noted, all of Ruth's estate had been acquired by gifts from her mother's separate property. It was claimed that under Probate Code section 229, subdivision (b) Frances' heirs were entitled to succeed to Ruth's estate to the exclusion of Ruth's natural heirs, Richard and Alice, siblings of the half blood. The trial court determined that the gifts made by Frances to Ruth were from property that had been community property and had never been Frances' separate property; that said section 229, subdivision (b) was inapplicable and, pursuant to Probate Code section 225, respondents Richard and Alice, being in closer degree of kindred to Ruth than the collateral heirs represented by appellant, were entitled to succeed to the whole thereof. Judgment was accordingly entered and this appeal followed.
(1a) The determinative issue herein is whether or not the trial court was correct in holding that the term "separate property" in said section 229, subdivision (b) refers only to property which was separate at the time of its acquisition by a donor parent or grandparent and does not encompass community property held by a donor parent or grandparent *487 by succession from a predeceased spouse. The section provides that where an intestate decedent leaves neither spouse nor issue "that portion of the estate created by gift, descent, devise or bequest from the separate property of a parent or grandparent shall go to the parent or grandparent who made such gift ... or from whom the property descended, or if such parent or grandparent is dead, such property shall go in equal shares to the heirs of such deceased parent or grandparent." The issue is one of first impression and poses the question of whether or not the Legislature intended the term "separate property" to have a different meaning in section 229, subdivision (b) from the well-settled meaning accorded to the same term in section 229, subdivision (a) by the courts prior to the 1970 addition of section 229, subdivision (b) to the Probate Code.
(2) The right of an heir to inherit an estate is the creature of statute and not a natural or absolute right. (Brenham v. Story (1870) 39 Cal. 179, 185; Estate of Porter (1900) 129 Cal. 86, 89 [61 P. 659].) (1b) Succession to the separate property of an intestate decedent is governed by section 220 et seq. (div. 2, ch. 2) of the code. The legislative history and content of the sections embraced in said chapter make it clear that the Legislature intended to provide a comprehensive scheme for the determination of such rights in virtually all contingencies.
Probate Code sections 228 and 229, subdivision (a)[2] derive respectively from 1880 and 1905 additions to subdivision 8 of former Civil Code *488 section 1386 which had been adopted in 1872 to supersede the Descent and Distribution Act of 1850. The content of said subdivision 8 became sections 228 and 229 of the Probate Code when it was enacted in 1931. Section 229, subdivision (b)[3] was enacted in 1970 as a new subdivision of section 229 which was redesignated 229, subdivision (a). Prior thereto, sections 228 and 229 had been held to be "interrelated and mutually dependent upon each other," and to constitute an "attempt to work out a reasonable, consistent scheme of distribution wherein upon the death of a decedent intestate without issue, instead of the whole property [of a marriage] going to the relatives of the last surviving spouse, the property should go back to the relatives of the spouse from which title was derived." (Estate of Rattray (1939) 13 Cal.2d 702, 713, 715 [91 P.2d 1042].) Estate of Reizian (1951) 36 Cal.2d 746 at page 749 [227 P.2d 249] stated: "In determining the character of property for the purpose of applying sections 228 and 229 of the Probate Code, it is the source of its acquisition, and not the nature of its ownership immediately before death [of a surviving spouse], which is controlling." Rattray held that community property which came to a surviving spouse by inter vivos gift from a predeceased spouse is not deemed separate property but remains community property for the purposes of section 228. Conversely, Reizian held that an agreement between spouses (inferred from recitations in their mutual wills) that all property owned by them was their community property did not transmute the wife's separate property into community property where section 229 would otherwise be applicable.
Appellant points to the fact that sections 228 and 229, subdivision (a) contain specific language defining the mode or manner of acquisition of property in the hands of an intestate surviving spouse which is omitted from section 229, subdivision (b) in its reference to "the separate property of a parent or grandparent" as the source of the intestate child's or grandchild's estate. It is argued that because the applicability of sections *489 228 and 229, subdivision (a) is made directly dependent upon the existence of one or more specified modes of acquisition the absence of similar language in section 229, subdivision (b) clearly shows that the Legislature was not concerned with how a donor parent or grandparent acquired the donated property during his or her marriage. Appellant concludes that such omission constitutes a clearly expressed legislative intent that the term "separate property" in section 229, subdivision (b) was not used in the context of the marriage of the donor parent or grandparent and the "original source" rule, enunciated in Rattray, Reizian and other cases, has no application to section 229, subdivision (b). For the following reasons, we reject appellant's argument and hold that the term "separate property" in section 229, subdivision (b) must be construed in the same sense as it was used in section 229, subdivision (a).
(3) The Legislature is presumed to have knowledge of existing judicial decisions and to have enacted statutes in the light thereof. (Estate of McDill (1975) 14 Cal.3d 831, 839 [122 Cal. Rptr. 754, 537 P.2d 874].) Where words used in a new statute have been construed as having been used in a particular sense in a former statute on the same or an analogous subject, they are presumed to have been used in the same sense in the new statute unless there is a clearly expressed intention to the contrary. (People v. Curtis (1969) 70 Cal.2d 347, 355 [74 Cal. Rptr. 713, 450 P.2d 33].) (1c) Although the focus of sections 228 and 229, subdivision (a) is upon succession to property in the context of the marriage of a predeceased and an intestate surviving spouse and that of section 229, subdivision (b) upon succession as between parent or grandparent and an intestate child or grandchild to whom gifts have been made out of the separate property of a donor parent or grandparent, the three provisions deal with the common subject matter of succession and are related to that extent. Further, the policy reflected in sections 228 and 229, subdivision (a) of returning property of an intestate estate to the natural heirs of the party by whose effort it was acquired is closely analogous to the policy reflected in section 229, subdivision (b).
Separate property as defined in Civil Code sections 5107 and 5108 has no meaning except in the context of the marriage of an owner and as distinguished from community property defined in section 5110 of said code. We find no merit in appellant's contention that separate property clearly and unequivocally means "The ownership of property by a single person" defined in Civil Code section 681. The word "single" in said section does not refer to the marital status of an owner. The Civil Code itself distinguishes between sole or several ownership and separate *490 property. We may also note that community property may be owned in the sole name of one spouse.
(4) Under well-settled rules of statutory construction, the laws of succession are to be regarded as a single statute which should be harmonized and interpreted in order to effectuate all provisions thereof. An interpretation of a statute that would render a key word surplusage is to be avoided. (People v. Gilbert (1969) 1 Cal.3d 475, 480 [82 Cal. Rptr. 724, 462 P.2d 580].) (1d) If the origin of the donor parent's or grandparent's ownership were not to be determined as required by cases construing sections 228 and 229, subdivision (a), no meaning would be given to the word separate in section 229, subdivision (b) and the section would be applicable to any property of a widowed donor parent or grandparent of an intestate and could thus exclude the blood relatives and natural heirs of the intestate in favor of collateral heirs standing in a more remote degree of kindred to the intestate. Such result directly frustrates a most important policy consideration that underlies the law of succession to separate property as contained in the Probate Code. If the Legislature had intended such result it could have inserted words that would have included community property in the hands of a widowed parent or grandparent or otherwise define mode of acquisition with the same specificity used in sections 228 and 229, subdivision (a) and thus make it clear that a major departure from policy was intended. Its failure to do so indicates that the word "separate" was used in the new legislation in the same sense used in section 229, subdivision (a). It follows that the trial court was correct in its determination that section 225 controls the succession to decedent's estate and section 229, subdivision (b) was not applicable to the contested portion of Ruth's estate.
Appellant contends that the interpretation of Probate Code section 254[4] adopted in Estate of Sayles (1932) 215 Cal. 207 [8 P.2d 1009], and limited to real property in Estate of Ryan (1943) 21 Cal.2d 498 [133 P.2d 626] should be reconsidered and section 254 be construed to control personal as well as ancestral real property. Because Ruth's estate consisted solely of personal property, there is no conflict between section 254 as limited by Ryan and section 229, subdivision (b). We may note that a brief comment on section 229, subdivision (b) in 2 Pacific L.J. (1971) *491 283, states that the changes effected by the 1970 amendment conform to the rule that the origin or source of property controls disposition and do not change the ancestral property rule. The invitation to overrule Ryan is declined.
We find no merit in appellant's remaining contentions. The trial court did not err in determining that the parental gifts to Ruth were made from Frances' community property. The presumption of former Civil Code section 164 that property standing in the sole name of a married woman was her separate property was rebuttable. There was substantial evidence to overcome the presumption and to support the court's finding. (5) Nor was Richard estopped to assert a claim to Ruth's estate by the terms of the release and assignment to Frances of his present or future interest in Joseph's estate. The assignment encompassed only rights in his father's estate and not in his half-sister's estate. Neither does a collateral estoppel arise because of the decree of distribution in Joseph's estate. Assets then standing in Frances' name were not before the court and the decree did not determine that such were Frances' separate property. (Cf. Rest., Judgments, § 68, subd. (2), p. 293.) The determination that Joseph's estate was community property does not necessarily imply that the court found property not mentioned in the court's record to be Frances' separate property. Further, the evidence did not establish the essential elements of an equitable estoppel against Richard or Alice as enumerated in Benitez v. City and County of San Francisco (1978) 77 Cal. App.3d 918, 922 [144 Cal. Rptr. 15].) Neither Alice nor Richard made any express or implied representation to or concealed any material facts from Frances or the probate court. Their failure to then demand that assets in Frances' name were community property and should have been accounted for in Joseph's estate did not constitute a waiver because they had no rights therein at the time and no advantage would have accrued to them from such demand.
The judgment is affirmed.
Scott, Acting P.J., and Feinberg, J., concurred.
A petition for a rehearing was denied August 4, 1978, and appellant's petition for a hearing by the Supreme Court was denied September 14, 1978.
NOTES
[*] Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.
[1] Frances had died in 1972 leaving an estate valued in excess of $200,000. Her will, still in probate at the time of Ruth's death, contained bequests of $15,000 to Alice and $3,000 to Richard with the balance left in trust to Ruth for life and the remainder to eight blood relatives, including the persons represented by appellant herein.
[2] Probate Code section 228 reads: "If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was community property of the decedent and a previously deceased spouse, and belonged or went to the decedent by virtue of its community character on the death of such spouse, or came to the decedent from said spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead, or in a joint tenancy between such spouse and the decedent or was set aside as a probate homestead, such property goes in equal shares to the children of the deceased spouse and their descendants by right of representation, and if none, then one-half of such community property goes to the parents of the decedent in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of the decedent and their descendants by right of representation, and the other half goes to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of said deceased spouse and to their descendants by right of representation.

"If any of the property subject to the provisions of this section would otherwise escheat to this state because there is no relative, including next of kin of one of the spouses to succeed to such portion of the estate, such property shall be distributed in accordance with the provisions of Section 296.4 of this code."
Probate Code section 229, subdivision (a) reads: "(a) If the decedent leaves neither spouse nor issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, or became vested in the decedent on the death of such spouse by right of survivorship in a homestead or in a joint tenancy between such spouse and the decedent, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then to the parents of the deceased spouse, in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation."
[3] Probate Code section 229, subdivision (b) reads: "(b) If the decedent leaves neither issue nor spouse, that portion of the estate created by gift, descent, devise, or bequest from the separate property of a parent or grandparent shall go to the parent or grandparent who made such gift, devise, or bequest or from whom the property descended, or if such parent or grandparent is dead, such property shall go in equal shares to the heirs of such deceased parent or grandparent."
[4] Probate Code section 254 reads: "Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance came to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor must be excluded from such inheritance in favor of those who are."