[Civ. No. 51578. Second Dist., Div. Three. Sept. 25, 1978.]

MICHAEL JAMES O'SULLIVAN, Plaintiff and Appellant, v. SALVATION ARMY et al., Defendants and Respondents.

## COUNSEL

Donald Kottler for Plaintiff and Appellant.

Kenneth Z. Lautman, Herbert Lasky, Haight, Dickson, Brown, Bonesteel & Rigg, Steven L. Hoch and Roy G. Weatherup for Defendants and Respondents.

## OPINION

**ALLPORT, J.**—We deem this appeal to be from an order of dismissal entered following the sustaining of a demurrer without leave to amend as to defendants the Salvation Army and Eagle Star Insurance Company. The appeal lies. (Code Civ. Proc., §§ 581d, 904.1, subd. (a).)

*Facts*

The facts are not in dispute. Michael James O'Sullivan alleges to have suffered personal injuries while riding as a passenger in a motor vehicle owned by the Salvation Army (Army) and being operated by one of its employees when that vehicle was struck in the rear by an uninsured motorist. The Army was possessed of a valid certificate of self-insurance issued in accordance with sections 16052 and 16053 of the Vehicle Code. The certificate contained no waiver of uninsured motorist coverage. In addition the Army had a policy of liability insurance issued by Eagle Star Insurance Company. It is alleged that this policy was excess above the amount of coverage for which the Army was self-insured and also contained no waiver of uninsured motorist coverage. Both the Army and Eagle Star refused to honor O'Sullivan's uninsured motorist claim giving rise to this declaratory relief action. The demurrer was sustained on the ground of failure to state facts sufficient to constitute a cause of action.

## Contentions

Basically O'Sullivan contends public policy underlying the state financial responsibility laws (Veh. Code, § 16000 et seq.) mandates the extension of the uninsured motorist coverage concept embodied in Insurance Code section 11580.2, subdivision (a)[1] to persons authorized as self-insurers under Vehicle Code section 16053 subdivision (a).[2] We find ourselves unable to fully comprehend much less concisely state the contentions pro and con respecting Eagle Star. For reasons to follow our inability in this respect will be of little consequence in deciding the case.

## Discussion

■ We see no room for argument that, in enacting the financial responsibility and uninsured motorist laws, the Legislature intended a broad and comprehensive scheme to protect those using the highways from the ravages of the negligent, financially irresponsible driver of a motor vehicle. It is equally clear that the enacting of such a statutory scheme is a legislative function. The scheme is to be broadly construed in light of underlying policy consideration to insure its application as intended by the Legislature. As a corollary it is clear that broad construction by the courts in applying the statutes does not entail judicial legislation in the course of determining legislative intent. ■ The argument advanced on behalf of O'Sullivan must fail because to hold the

---

[1]This section provides in pertinent part: "(a)(1) No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, except for policies which provide insurance in the Republic of Mexico issued or delivered in this state by nonadmitted Mexican insurers, shall be issued or delivered in this state to the owner or operator of a motor vehicle, or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally used or principally garaged in this state, unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the financial responsibility requirements specified in Section 16056 of the Vehicle Code insuring the insured, his heirs or his legal representative for all sums within such limits which he or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle."

[2]This section provides: "The department may in its discretion, upon application, issue a certificate of self-insurance when it is satisfied that the applicant in whose name more than 25 vehicles are registered is possessed and will continue to be possessed of ability to pay judgments obtained against him in amounts at least equal to the amounts provided in Section 16056. The certificate may be issued authorizing the applicant to act as a self-insurer for either property damage or bodily injury or both. Any person duly qualified under the laws or ordinances of any city or county to act as self-insurer and then acting as such, may upon filing with the department satisfactory evidence thereof, along with the application as may be required by the department, be entitled to receive a certificate of self-insurance."

Army financially responsible in this case would require us to exceed the limits of statutory interpretation and legislate in the area of financial responsibility. In reaching this conclusion we envisage no need to interpret but only to follow and apply the existing law.

Vehicle Code section 16020 provides: "Every driver of, and owner of, a motor vehicle shall, at all times, maintain in force one of the forms of financial responsibility specified in Section 16021." The latter section permits one to be (a) "A self-insurer under the provisions of this division," or (b) "An insured . . . under a form of insurance . . . which complies with the requirements of this division."

It is alleged that the Army held a certificate of self-insurance. Presumably the certificate was issued in accordance with section 16053, subdivision (a), and met the requirements of sections 16436 and 16430 binding the Army to respond in damages for a single personal injury or death in an amount not less than $15,000. We are referred to no statutory requirement that the self-insurer cover an uninsured motorist's liability as is required of one electing to qualify as an insured under section 16021, subdivision (b). Thus the Army has fully complied with the financial responsibility laws of the state as enacted by the Legislature. While an extension of the uninsured motorist concept to self-insurers may, as argued by O'Sullivan, have persuasive social virtues, to date the Legislature in its wisdom has not seen fit to require that of self-insurers.

We see no merit in the argument that the certificate of self-insurance should be construed to include uninsured motorist coverage because of Insurance Code section 11580.2, subdivision (a). Bearing in mind that section 11580.2, subdivision (a), is found in the Insurance Code and defines the obligation of an insurance carrier to include such coverage in all motor vehicle liability insurance policies issued in this state without reference to obligations of self-insurers, nothing short of legislation on our part can effect the result urged by O'Sullivan in this case. The trial court acted properly in sustaining the Army's demurrer.

We have examined the cases cited by O'Sullivan in support of his position and find them factually distinguishable and otherwise not controlling of our decision herein. While the same can be said of the case law cited by both the Army and Eagle Star on this point, *Glens Falls Ins. Co.* v. *Consolidated Freightways* (1966) 242 Cal.App.2d 774 [51 Cal.Rptr. 789], is worthy of comment. In *Glens Falls,* Consolidated Freightways was a self-insured common carrier engaged in the trucking business. One of

its drivers was injured by the negligence of one Jorden, an employee of Basalt Rock Co., while assisting the driver in loading a Consolidated truck. The driver sued Jorden who claimed to be insured by Consolidated by reason of Jorden's being a permissive user of Consolidated's truck. In an action brought by Jorden's insurer, Glens Falls, against Consolidated seeking a declaration of its rights and duties, the trial court granted a motion for summary judgment in favor of Consolidated, reasoning at page 777: " 'that unless an insurance policy exists which covers loading and unloading as an expansion of the term "use" of a vehicle covered, loading and unloading are not such a use of a vehicle which would impose liability on the owner for injuries caused by other parties. On the basis of this conclusion under the facts of this case, the defendant is not legally responsible for the negligence of the employee of Basalt Rock Company.' "

The Court of Appeal affirmed the judgment pointing out that an owner's policy of motor vehicle liability insurance provided for in Vehicle Code "section 16451 does not create any independent legal liability for the negligent operation of a motor vehicle by a permissive user. As we have explained, that section merely prescribes the necessary terms and provisions of an insurance policy furnished as proof of ability to respond in damages and thus constituting one of the several methods of establishing exemption from the requirement of depositing security to satisfy any final judgment or judgments for bodily injury or property damage (§ 16057)." (P. 782.) The court concluded by stating, at page 785: "Defendant Consolidated is not an insurance carrier. Nor does this case involve any motor vehicle liability policy issued and outstanding at the time of the accident. Consolidated is merely an authorized self-insurer or, to put it more exactly, a company to which the motor vehicle department has issued a certificate of self-insurance. Neither the Vehicle Code sections referring to self-insurance (§§ 16055, 16056) nor any other sections of said code contain any provisions that such certificate is or constitutes a policy of motor vehicle liability insurance or that said certificate shall be deemed to incorporate or embrance [sic] provisions required in such policies (§ 16451). Indeed the Vehicle Code nowhere intimates any connection between section 16451 and sections 16055, 16056. A certificate of self-insurance is not a motor vehicle liability *policy* of insurance. In a word, it is not an insurance policy at all and plaintiff has offered no authority that it is. As we previously explained, it is merely one of the several methods provided by law for establishing exemption from furnishing security. Faced with these realities, Glens Falls attempts to transmogrify the certificate of 'self-insurance' by dropping the word

'self,' to assume that the resultant product is 'insurance' and thereafter to engraft on such 'insurance' all of the rules dealing with liability insurance. No authority, statutory or decisional, supports such a construction.

"The simple answer here is that this case does not involve the contractual obligations of an insurance company."

Plaintiff attempts to distinguish *Glens Falls* from the case at bench asserting that *Glens Falls* involved the issue of which of two insurance carriers would be liable rather than whether a tort victim of a negligent uninsured motorist would be denied any coverage at all. We do not agree. Glens Falls was subrogated to the rights of its insured, Jorden, in seeking "coverage," under Consolidated's certificate of self-insurance. Basically both cases are the same. Neither involves the contractual obligations of an insurance company under a policy of insurance.

■ With respect to Eagle Star, it is alleged that its policy is excess above the amount of coverage for which the Army is self-insured. We consider ourselves bound by this as a fact. It follows as a matter of law that the Eagle Star policy extends no coverage whatsoever for uninsured motorist liability. The Army's obligation as a self-insurer under the financial responsibility laws and O'Sullivan's right, if any, under uninsured motorist coverage, are both the same—$15,000. (Veh. Code, §§ 16053, 16056; Ins. Code, § 11580.2, subd. (a)(1).) Under such circumstances Eagle Star cannot be required to respond to O'Sullivan under an excess policy for an obligation of the Army created by the financial responsibility laws. By its terms Eagle Star's coverage becomes applicable only when the Army's liability exceeds its retention as a self-insurer irrespective of whether the excess results from an extension of uninsured motorist coverage concept or otherwise.

No argument is advanced that policies written to cover liability in excess of the basic limits of statutory liability are required to provide uninsured motorist coverage. Insurance Code section 11580.1, subdivision (a), in speaking of required policy provisions, excepts the requirements set forth in subdivision (b) from policies in excess of a retained limit for self-insurance specified in Vehicle Code section 16056, subdivision (a). Section 11580.2, by its express terms applies only to basic limit policies offered for proof of financial responsibility under Vehicle Code section 16056. Since the basic limit requirement is satisfied by the certificate of

self-insurance, Eagle Star's excess policy offers no coverage for O'Sullivan in this case.

We conclude that the trial court properly sustained the demurrer as to the purported causes of action involving the Army and Eagle Star.

The judgment (order of dismissal) is affirmed.

Cobey, Acting P. J., and Potter, J., concurred.

A petition for a rehearing was denied October 24, 1978, and appellant's petition for a hearing by the Supreme Court was denied November 24, 1978.