[No. AO19010. First Dist., Div. Five. Feb. 6, 1984.]

PACIFIC INTERMOUNTAIN EXPRESS, Plaintiff and Respondent, v. NATIONAL UNION FIRE INSURANCE COMPANY et al., Defendants and Appellants.

COUNSEL

Michele K. Trausch for Defendants and Appellants.

William H. Gavin and Gassett, Perry & Frank for Plaintiff and Respondent.

OPINION

**KING, J.**—In 1979, Thomas Near was injured at a jobsite owned by Charles King Associates (King) while unloading parts from a truck owned

and operated by Pacific Intermountain Express (PIE). PIE self-insured its vehicles for loss arising from their use up to $1 million.[1] King has an insurance policy covering the jobsite with National Union Fire Insurance (National Union). Near's negligence action against PIE (not naming King or National Union) has been settled. In 1982, PIE filed an action seeking a declaration that King and National Union had a duty to defend and indemnify PIE in the negligence suit brought by Near.

PIE moved for summary judgment, arguing that King and National Union were the primary insurers under Insurance Code section 11580.9, subdivision (c), which provides the premises policy carrier is the primary insurer where a loss arising from unloading a motor vehicle is covered by insurance policies on both the premises and the vehicle.[2] King and National Union opposed the motion, arguing that section 11580.9, subdivision (c), did not protect PIE because PIE was a self-insurer. They also argued that a 1980 amendment to section 11580.9 to include self-insurers did not apply because it occurred after the accident and could not be applied retroactively.[3]

The court granted summary judgment for PIE, finding that section 11580.9, subdivision (c), did apply to self-insurers with regard to accidents before the 1980 amendment because the amendment was merely a clarification rather than a material change of the statute. We reverse the judgment.

Prior to the 1980 amendment, section 11580.9, subdivision (c), was held not to apply to self-insurers because the statutory scheme and precedent indicated that a certificate of self-insurance was not an insurance policy.

---

[1]The term "self-insurer" as used herein is defined in Vehicle Code section 16052 to include any person who has obtained a state-issued certificate of self-insurance.

[2]All statutory references are to the Insurance Code unless otherwise noted.

[3]Section 11580.9, subdivision (c), reads: "Where two or more policies are applicable to the same loss arising out of the loading or unloading of a motor vehicle, and one or more of the policies is issued to the owner, tenant, or lessee of the premises on which the loading or unloading occurs, it shall be conclusively presumed that the insurance afforded by the policy covering the motor vehicle shall not be primary, notwithstanding anything to the contrary in any endorsement required by law to be placed on such policy, but shall be excess over all other valid and collectible insurance applicable to the same loss with limits at least equal to the financial responsibility requirements specified in Section 16056 of the Vehicle Code; and, in such event, the two or more policies shall not be construed as providing concurrent coverage, and only the insurance afforded by the policy or policies covering the premises on which the loading or unloading occurs shall be primary and such policy or policies shall cover as an additional insured with respect to the loading or unloading operations all employees of such owner, tenant, or lessee while acting in the course and scope of their employment."

"Primary" insurance is first to be used in meeting a claim or obligation; "excess" insurance picks up the obligation after the primary insurance has been used up. (Sen. Com. on Ins. and Financial Institutions, Analysis of Assem. Bill No. 2607 (1980).)

(*Metro U.S. Services, Inc.* v. *City of Los Angeles* (1979) 96 Cal.App.3d 678, 681-684 [158 Cal.Rptr. 207].)[4] In 1980, the Legislature added subdivision (g) to section 11580.9, providing that "[f]or purposes of this section, a certificate of self-insurance issued pursuant to Section 16053 of the Vehicle Code or a report filed pursuant to Section 16051 of the Vehicle Code shall be considered a policy of automobile liability insurance."

██ It is well established that a statute will not be retroactively applied unless the Legislature clearly intended the law to be retroactive. (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 176-177 [18 Cal.Rptr. 369, 367 P.2d 865].) ██ Further, a substantial change in the language of a law generally infers an intent to change its meaning. (*W. R. Grace & Co.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 720, 729 [151 P.2d 215].) ██ The 1980 amendment of section 11580.9 added substantially new language, and neither the language nor the legislative history of this amendment manifests legislative intent for retroactive application. (See *Western Pioneer Ins. Co.* v. *Estate of Taira* (1982) 136 Cal.App.3d 174, 180 [185 Cal.Rptr. 887] [suggesting that § 11580.9, subd. (g), is not retroactive].) Application of these general rules indicates that section 11580.9, subdivision (c), did not cover self-insurers before the 1980 amendment.

██ The requirement of legislative intent for retroactivity, however, does not apply to an amendment which merely clarifies rather than changes the meaning of a law. (*Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 828, fn. 8 [114 Cal.Rptr. 589, 523 P.2d 629].) The reason for this exception is that no retroactive effect is given because the true meaning of the statute has always been the same. (*Stockton Sav. & Loan Bank* v. *Massanet* (1941) 18 Cal.2d 200, 204 [114 P.2d 592].) ██ Similarly, although a substantial change in language generally indicates intent to change a law, surrounding circumstances may show that the amendment was merely a clarification of existing law. (*W. R. Grace & Co.* v. *Cal. Emp. Com., supra,* 24 Cal.2d at p. 729.)

The trial court held that section 11580.9, subdivision (c), applied to self-insurers before the 1980 amendment because "[t]he surrounding circumstances imply that the amendment was to clarify legislative intent regarding existing law rather than to change the law." The fundamental defect in the court's reasoning is that section 11580.9, subdivision (c), did not implicitly apply to self-insurers before the amendment. ██ To the contrary, the statutory framework, precedent, and principles of statutory construction in-

---

[4]The court in *Metro* actually construed subdivision (b) of section 11580.9. It is clear, however, that this holding is equally applicable to subdivision (c).

dicate that section 11580.9, subdivision (c), could not have been properly construed to cover self-insurers before the 1980 amendment.

Nothing in the pre-1980 language of section 11580.9 indicates that a certificate of self-insurance was "insurance afforded by [a motor vehicle] policy" under subdivision (c). To the contrary, as noted in *Metro*, the overall design of statutes on insurance ". . . carefully demarks self-insurers apart from insurers or holders of policies of insurance." (*Metro U.S. Services, Inc.* v. *City of Los Angeles, supra,* 96 Cal.App.3d at p. 682.) Thus, the only reference to "self-insurers" before the 1980 amendment was not in the Insurance Code, but in the Vehicle Code. (See Veh. Code, §§ 16052, 16053.) ■ These provisions simply define a self-insurer as a person who has established proof of financial responsibility for automobile accidents by receiving a certificate of self-insurance, which may be issued by the state on a showing that the applicant owns more than 25 vehicles and will be able to satisfy judgments. These provisions in no way suggest that a self-insurer is subject to the rights and duties of insurers or insurance policy holders under the Insurance Code. Indeed, Vehicle Code section 16054 indicates that filing evidence of an automobile insurance policy is a distinct method of showing financial responsibility, thus implying that a certificate of self-insurance is not an insurance policy. Further, a certificate of self-insurance need not include any of the terms required by law of all automobile liability insurance policies. (See Ins. Code, § 11580.1.) Finally, section 22, which section 5 makes applicable to all code provisions unless the context requires otherwise, defines insurance as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." A certificate of self-insurance involves neither a contract nor indemnification of another, and nothing in the context of section 11580.9, subdivision (c), *requires* a different definition of insurance.

■ From this analysis, we conclude section 11580.9, subdivision (c), did not apply to self-insurers before the 1980 amendment. Precedent reinforces this conclusion. Four years before the adoption of section 11580.9, the argument that a self-insurer should have the same legal duties as a company providing a contractual insurance policy was expressly rejected. (*Glens Falls Ins. Co.* v. *Consolidated Freightways* (1966) 242 Cal.App.2d 774 [51 Cal.Rptr. 789].) The court concluded: "A certificate of self-insurance is not a motor vehicle liability *policy* of insurance. In a word, it is not an insurance policy at all and plaintiff has offered no authority that it is. As we previously explained, it is merely one of the several methods provided by law for establishing exemption from furnishing security. Faced with these realities, Glens Falls attempts to transmogrify the certificate of 'self-

insurance' by dropping the word 'self,' to assume that the resultant product is 'insurance' and thereafter to engraft on such 'insurance' all of the rules dealing with liability insurance. No authority, statutory or decisional, supports such a construction." (*Id.*, at p. 785; see also *O'Sullivan* v. *Salvation Army* (1978) 85 Cal.App.3d 58 [147 Cal.Rptr. 729] [relying on *Glens Falls* in holding that Ins. Code, § 11580.2 does not apply to self-insurers].)

■ It is a well established rule of statutory construction that the Legislature is presumed "to have knowledge of existing judicial decisions and to have enacted statutes in light thereof." (*Estate of Hoegler* (1978) 82 Cal.App.3d 483, 489 [147 Cal.Rptr. 289].) Accordingly, the Legislature is presumed to use words in the same sense as given by previous judicial construction of statutes on an analogous subject, unless the Legislature clearly expresses a contrary intent. (*Ibid.*; see *People* v. *Curtis* (1969) 70 Cal.2d 347, 355 [74 Cal.Rptr. 713, 450 P.2d 33].) *Glens Falls* was decided four years before the enactment of section 11580.9, subdivision (c), and indicated that a certificate of self-insurance was not an "insurance policy" for any purpose. ■ Therefore, absent clear evidence of a contrary intent, the Legislature must be presumed to have intended section 11580.9, subdivision (c), to cover only insurance companies and holders of insurance policies, and not self-insurers.

Although PIE's arguments are not without merit, none demonstrate *clear* evidence of legislative intent to include self-insurers which would overcome the presumption created by the statutory framework and *Glens Falls* that section 11580.9, subdivision (c), did not apply to self-insurers before 1980. If the Legislature had intended to override this presumption, it could have expressly declared such intent. The language and legislative history of the bill enacting section 11580.9, however, do not clearly show such intent, and considerations of fairness and logic do not require rejection of the presumption that section 11580.9, subdivision (c), did not originally cover self-insurers.

Thus, although inclusion of self-insurers within section 11580.9, subdivision (c), may be consistent with a general objective of avoiding conflicts, the Legislature declared an intent to avoid conflicts only concerning the primacy of "various policies of liability insurance." (Ins. Code, § 11580.8.) Nothing in the language or legislative history of this section indicates that this phrase should be construed to cover certificates of self-insurance. ■ To the contrary, the phrase "liability insurance" appears intended to have the same meaning as in section 11580.1, which was enacted concurrently with sections 11580.8 and 11580.9, and which clearly does not cover certificates of self-insurance. (See *Western Pioneer Ins. Co.* v.

*Estate of Taira, supra,* 136 Cal.App.3d at pp. 179-180.) The Legislature declared an intent to avoid controversy regarding only insurance policies and not certificates of self-insurance, and extension of section 11580.9, subdivision (c), to self-insurers is not necessary to effectuate this intent.

Similarly, although it may be reasonable to extend section 11580.9 to both insurance companies and self-insurers, exclusion of self-insurers is not patently irrational or unfair. As noted in *Metro,* section 11580.9 obviously "did not intend to settle all issues of primary and secondary responsibility." (*Metro U.S. Services, Inc.* v. *City of Los Angeles, supra,* 96 Cal.App.3d at p. 683.) Thus, "the Legislature may well have believed that the design of self-insurance made it inappropriate to settle the issue in the manner set forth in section [11580.9[5]] for settling disputes between insurance companies or that it was not a source of dispute sufficient to warrant inclusion in this legislation." (*Ibid.*) ■ Further, a major reason for enactment of section 11580.9 was to prevent conflicts due to insurance policy provisions through which one coinsurer would attempt to minimize liability by declaring the policy to be excess over other policies. (*Zurich-American Ins. Co.* v. *Liberty Mut. Ins. Co.* (1978) 85 Cal.App.3d 481, 485 [149 Cal.Rptr. 472].) This reason does not apply to certificates of self-insurance since they are issued by the state and do not contain such exculpatory provisions.

A similar argument that section 11580.2 should apply to self-insurers because of considerations of legislative intent and public policy was rejected in *O'Sullivan* v. *Salvation Army, supra,* 85 Cal.App.3d 58. The court acknowledged that section 11580.2 and Vehicle Code sections 16000-16053 should be broadly construed to protect persons injured by negligent and financially irresponsible motorists. The court, however, sustained a demurrer to a negligence claim brought by a person injured while riding in the vehicle of a self-insurer, explaining: "The [statutory] scheme is to be broadly construed in light of underlying policy consideration to insure its application as intended by the Legislature. As a corollary it is clear that broad construction by the courts in applying the statutes does not entail judicial legislation in the course of determining legislative intent. The argument advanced on behalf of O'Sullivan must fail because to hold the Army financially responsible in this case would require us to exceed the limits of statutory interpretation and legislate in the area of financial responsibility. In reaching this conclusion we envisage no need to interpret but only to follow and apply the existing law." (*Id.,* at pp. 61-62; see also *Western Pioneer*

---

[5]The opinion reads "section 11580.1," but this appears to be a misprint in view of the context and the fact that section 11580.1 covers only the terms of policies, and not settlement of disputes.

*Ins. Co.* v. *Estate of Taira, supra,* 136 Cal.App.3d at pp. 179-181 [§ 11580.1 not applicable to self-insurers in spite of strong contrary public policy]; *Metro U.S. Services, Inc.* v. *City of Los Angeles, supra,* 96 Cal.App.3d at p. 683 ["If the statutory design leaves the self-insured motorist (City) outside the purview of a statute designed to settle disputes between insurance carriers (regarding primary or secondary liability) it is not our function to provide our concept of whether the Legislature would have done it or not."].)

The reasoning in *O'Sullivan* is sound and is equally applicable to the case at bar. The statutory framework and precedent require that section 11580.9, subdivision (c), be interpreted not to cover self-insurers before the 1980 amendment absent clear evidence of a contrary legislative intent. The Legislature did not express such intent when it enacted section 11580.9, subdivision (c), in 1970; thus, the statute does not cover self-insurers before the 1980 amendment, since the amendment materially changed the law.

PIE argues that the amendment of section 11580.9 soon after the *Metro* decision shows that the Legislature was acting to clarify the original meaning of the law, which the *Metro* court had misinterpreted not to include self-insurers. The first problem with this argument is that it is questionable whether even an express legislative declaration of intent to clarify existing law would necessarily make the 1980 amendment a "clarification" since, as demonstrated above, the law could not have been properly interpreted to cover self-insurers before the amendment. Even assuming, however, that an express declaration of intent to clarify existing law could overcome the presumption that section 11580.9, subdivision (c), was not originally intended to cover self-insurers, it is apparent that the Legislature failed to declare such intent. Indeed, although the evidence of legislative intent is not conclusive, it is more consistent with intent to change than to clarify the law.

Thus, the fact that the 1980 amendment was a reaction to *Metro* does not necessarily imply that the amendment was intended as a clarification. An equally plausible interpretation is that the Legislature was acting to correct a weakness in existing law, which the *Metro* decision had brought to light. The timing of the amendment is, at best, ambiguous evidence of legislative intent; it certainly does not constitute *clear* evidence of intent to clarify the law.

If the Legislature had really intended to clarify the law, one would expect the language or legislative history of the 1980 amendment to contain some evidence of this intent, either through an express declaration or through

criticism of the *Metro* decision. For example, in a 1980 amendment to Government Code section 12419.5, the Legislature expressly stated that the amendment was "a clarification and declaration of existing law," passed in response to confusion arising from a recent decision. (See *Tyler* v. *State of California* (1982) 134 Cal.App.3d 973, 977 & fn. 2 [185 Cal.Rptr. 49]; see also *State Bd. of Equalization* v. *Board of Supervisors* (1980) 105 Cal.App.3d 813, 824-825 [164 Cal.Rptr. 739] [holding an amendment to be a clarification in part because the legislative counsel's digest stated that the amendment would make "various clarifying changes."].) In contrast, no evidence of intent to clarify appears in the language of the 1980 amendment of section 11580.9, in the legislative counsel's digest, or in the Assembly and Senate committee bill analyses.

Finally, the 1980 amendment provided that a certificate of self-insurance shall be considered an insurance policy only for purposes of section 11580.9. Neither the 1980 amendment nor any other amendment has changed the general rule that a certificate of self-insurance is not an insurance policy for the purpose of any other section. In particular, the Legislature has not altered the holdings of *O'Sullivan, supra,* 85 Cal.App.3d 58, and *Taira, supra,* 136 Cal.App.3d 174, that self-insurers are not covered by sections 11580.2 and 11580.1. Thus, far from demonstrating intent to clarify existing law, the 1980 amendment of section 11580.9 appears intended to change the law by making an express exception to the general rule that a certificate of self-insurance is not an insurance policy.

Thus, the statutory framework and precedent create a presumption that section 11580.9, subdivision (c), did not cover self-insurers before the 1980 amendment, absent clear evidence of a contrary legislative intent. The Legislature did not express such contrary intent either when it enacted section 11580.9, subdivision (c), in 1970, or when it added section 11580.9, subdivision (g), in 1980, and neither the surrounding circumstances nor considerations of fairness and logic necessarily imply such contrary intent. Therefore, we hold the 1980 amendment materially changed rather than merely clarified the statute.

An amendment which changes existing law cannot be retroactively applied unless the Legislature declares intent for retroactivity. The Legislature did not declare that the 1980 amendment of section 11580.9 should be retroactive. Therefore, the amendment does not apply, and section 11580.9, subdivision (c), does not require King and National Union to defend and indemnify PIE for liability arising from an accident occurring before the amendment. Accordingly, the trial court erred in granting summary judgment for PIE.

The judgment is reversed.

Low, P. J., and Haning, J., concurred.

A petition for a rehearing was denied March 1, 1984.