[No. G015734. Fourth Dist., Div. Three. Apr. 28, 1997.]

ORANGE COUNTY WATER DISTRICT, Plaintiff and Respondent, v. ASSOCIATION OF CALIFORNIA WATER AGENCIES JOINT POWERS INSURANCE AUTHORITY, Defendant and Respondent; FEDERAL INSURANCE COMPANY, Defendant and Appellant.

## COUNSEL

Nelsen, Thompson, Pegue & Thornton, Timothy M. Thornton, Jr., and Glenn M. White for Defendant and Appellant.

Barber & Bauermeister, Linda Bauermeister-Schlott and Karen S. Oittinen for Plaintiff and Respondent.

Kronick, Moskovitz, Tiedemann & Girard, Edward J. Tiedemann, Robin Leslie Stewart, and Jeffrey M. Starsky for Defendant and Respondent.

Joseph E. Sheeks and Terry J. Traktman as Amici Curiae on behalf of Plaintiff and Respondent and Defendant and Respondent.

## OPINION

**WALLIN, J.**—In this case we are asked to consider whether a public entity self-insurance pool, formed by several water agencies pursuant to a joint exercise of powers agreement, is "insurance" subject to a commercial insurer's policy provision that its coverage will not apply until all "other insurance" is exhausted. Because the statutes authorizing creation of public entity self-insurance pools specifically provide such arrangements *are not* to be considered insurance (Gov. Code, § 990.8, subd. (c)),[1] we conclude the "other insurance" clause is not applicable and affirm the judgment.

In 1979, the Orange County Water District (OCWD) and several other water agencies entered into a joint powers agreement (the JPA) which created the Association of California Water Agencies Joint Powers Insurance Authority (the ACWA-JPIA). The ACWA-JPIA was created under section 6500 et seq., authorizing the joint exercise of power by two or more public agencies; section 990.4, providing that public agencies may insure themselves against tort or other liabilities and may do so through self-insurance

---

[1]All statutory references are to the Government Code unless otherwise indicated.

and/or purchase of commercial insurance; and section 990.8 which authorizes two or more public entities to form a joint powers authority for the purposes of obtaining insurance or pooling self-insured claims or losses. The stated purpose of the ACWA-JPIA was to pool self-insured losses, jointly purchase excess insurance, and share administrative and other claims-related services. The ACWA-JPIA is a legal entity separate and distinct from any of its member districts.

Joint powers liability pooling arrangements, like the ACWA-JPIA, were approved by the Legislature in the 1970's in response to the insurance crisis faced by California public agencies. Part of the legislation was section 990.8, subdivision (c), which provides, "The pooling of self-insured claims or losses among entities as authorized in subdivision (a) of Section 990.4 *shall not be considered insurance* nor be subject to regulation under the Insurance Code." (Italics added.) The express purpose of this bill was to "recognize these self-insuring pools as an alternative to insurance and remove them from regulation under the Insurance Code." (*City of South El Monte* v. *Southern Cal. Joint Powers Ins. Authority* (1995) 38 Cal.App.4th 1629, 1634 [45 Cal.Rptr.2d 729], citing Assem. Com. on Finance, Insurance, and Commerce, Analysis of Sen. Bill No. 2054 (1975-1976 Reg. Sess.) as amended June 1, 1976.)

To participate in the ACWA-JPIA, each member district pays an annual "deposit premium" or contribution to the pool which pays for its own and other member districts' losses and administrative costs. The initial contribution is based on the member district's payroll, incurred losses for the prior three years, and other factors. Thereafter, the premium is based on the ratio of the member district's initial contribution to the total contributions. Periodically, an adjustment is made to the contribution amount to account for a member district's actual losses. As a result, the member district might get a refund of past contributions or be required to pay an additional amount for a prior year. If an additional payment is significantly higher than the member district's annual contribution, it may spread the payment over up to five years.

The JPA contained a detailed memorandum of liability coverage setting forth the types of losses which would be covered by the ACWA-JPIA and the limits of that coverage. As applicable here, the ACWA-JPIA will pay up to $500,000 for any one occurrence of bodily or personal injury or property damage.

In February 1990, OCWD entered into a contract with Beylik Drilling, Inc., for drilling services. The contract required Beylik to indemnify OCWD

for claims and to obtain appropriate liability insurance which named OCWD as an additional insured. The contract required the insurance policies be in a form acceptable to OCWD and contain an endorsement that it was primary insurance and that no insurance held by OCWD would be called upon to cover losses under the policies.

Beylik obtained two general liability policies. The first, from Maryland Casualty, and the second, an umbrella excess liability policy from Federal Insurance Corporation (FIC). The certificate of insurance provided to OCWD contained the statement that the liability policies were primary and no insurance of OCWD's would be called upon to cover losses under the policies.

The FIC policy contained a standard "other insurance" clause. The policy stated it would cover losses to which no "Underlying Insurance" (specifically defined as the Maryland policy) or "other insurance" applied. It also stated that if "other insurance" applied to the loss, the FIC policy was excess to that insurance and FIC would not pay until the "other insurance" was used up. The policy defined "other insurance" as any insurance other than the Underlying Insurance.

On July 16, 1991, Anthony Grossi was severely injured on the Beylik/OCWD jobsite. He sued Beylik and OCWD for $25 million. OCWD tendered the claim to Maryland and FIC. Maryland admitted coverage and provided a defense. FIC agreed there was coverage, but asserted its policy was excess to the Maryland policy *and* coverage under the ACWA-JPIA, and it would not extend coverage until coverage under both was exhausted.

OCWD filed its declaratory relief action against FIC in June 1993. The ACWA-JPIA was subsequently brought in as an additional defendant. OCWD filed its motion for summary judgment in December 1993, and ACWA-JPIA joined. One of FIC's arguments in opposition to the motion was that OCWD and ACWA-JPIA had either waived, or should be estopped to raise, the argument that the coverage under the JPA was not "insurance" because the JPA used the term "insurance" and other insurance-related expressions in describing the ACWA-JPIA's obligations toward its member districts. It requested it be allowed to conduct discovery on this issue to prove estoppel, but its motion for a continuance was denied.

The trial court granted summary judgment finding the JPA was not an insurance policy and the FIC "other insurance" provision was not applicable. FIC's motion for new trial was denied.

I

■ FIC contends the liability coverage provided OCWD by the ACWA-JPIA is subject to the "other insurance" clause contained in its policy. We disagree.

Summary judgment is granted when the evidence establishes there is no material issue of fact to be tried. (Code Civ. Proc., § 437c.) The facts are undisputed.[2] We exercise our independent judgment as to the legal effect of those facts. (*Downey Savings & Loan Assn.* v. *Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1086-1087 [234 Cal.Rptr. 835].)

The FIC policy provides that if "other insurance" applies to a loss, the FIC policy is excess to that insurance. FIC's first argument is that the ACWA-JPIA coverage is in reality insurance and is subject to all of the general principles of insurance law, including rules of priority of coverage. It is not.

Preliminarily, Insurance Code section 22 states that insurance is a contract which undertakes to indemnify the insured against loss, damage or liability, arising from an unknown or contingent event. A self-insurer does not contract to indemnify another, nor does the ACWA-JPIA indemnify its member agencies in the traditional sense. Rather, the member agencies through the ACWA-JPIA have pooled their resources to jointly manage their liability claims. Claims are paid out of the ACWA-JPIA's self-insured retention pool and then by excess insurance purchased by the ACWA-JPIA. Each member agency's contribution, or premium, is based on its loss history and payroll, but the contribution is later adjusted to reflect the agency's actual losses. Because the member agency ultimately pays back to the ACWA-JPIA amounts paid out in its behalf, there has been no shifting of the risk of loss. Thus, the arrangement lacks a fundamental feature of "insurance." (See *Nabisco, Inc.* v. *Transport Indemnity Co.* (1983) 143 Cal.App.3d 831, 836 [192 Cal.Rptr. 207] ["We recognize the term 'self-insurance,' while perhaps a misnomer, is nevertheless a common and accepted concept in risk management today."].)

Furthermore, FIC's contention that the ACWA-JPIA coverage is insurance directly conflicts with section 990.8, subdivision (c), which expressly provides such an arrangement is *not* insurance and is not subject to regulation by the Department of Insurance as such. FIC counters that we should, by resorting to the legislative history of the enactment of section 990.8, subdivision (c), interpret the section as meaning something other than what it so

---

[2]With the exception of undiscovered facts FIC speculates might exist with respect to its estoppel argument discussed *post*.

clearly states. It argues the legislative intent was very narrow; simply to exempt public entity self-insurance pools from Department of Insurance oversight. But, it urges, the Legislature did not intend to remove them from all other principles of insurance law.

In *City of South El Monte* v. *Southern Cal. Joint Powers Ins. Authority, supra,* 38 Cal.App.4th 1629, the court explained the intent of the Legislature in adopting section 990.8, subdivision (c) was twofold: "[To] recognize these self-insuring pools as an alternative to insurance *and* remove them from regulation under the Insurance Code." (38 Cal.App.4th at p. 1634, italics added.) Furthermore, the court concluded principles of insurance law *should not* be used to interpret the scope of a joint powers self-insurance pooling agreement. "Considering the purpose of the pooling arrangements, we determine questions of coverage are properly answered by relying on rules of contract law that emphasize the intent of the parties. Given a local entity's broad power to insure against all potential liabilities and to do that through joint power pooling arrangements, principles governing insurance carriers and insurance law have no applicability, absent consent of the parties to the pooling agreement. [¶] Joint authority pools are member directed. Municipalities best understand the nature of their risks and losses and a 'sense of ownership in the pool endeavor [is] an important motivation in practicing risk management.' [Citation.] The pools are the creation of the membership and reflect the local perspective on matters the members have elected to pool and share. Members agree to abide by the terms of their joint powers agreements and programs and agree to pool prescribed losses. They have the authority to self-insure as they deem appropriate and to provide additional coverage as necessary. This authority is based on the members' perceptions of which risks they elect to pool and which risks they do not. [¶] Members jointly determine the scope and extent of their own coverage. They do so by creating member-written agreements and programs tailored to suit the needs of the participating entities. The governing bodies of these pooling arrangements interpret the agreements and programs to implement the intent of the members. The joint powers agreement, bylaws and the self-insurance program, with related coverage memoranda, provide the framework within which to determine the rights, liabilities, and intentions of the pools and their respective members." (*Id.* at pp. 1639-1640.) The court went on to hold that while members of a joint powers authority might agree to incorporate some common insurance terms into their agreement, it does not mean they incorporate all principles governing insurance carriers and insurance law. (*Id.* at p. 1640.)

FIC also contends that even if the ACWA-JPIA is properly considered self-insurance, and not insurance, there is no rational reason to treat

self-insurance any differently than insurance for purposes of determining policy priorities. FIC relies primarily upon out-of-state authority. *Aetna Casualty & Surety Co.* v. *Market Insurance Co.* (Fla.Dist.Ct.App. 1974) 296 So.2d 555, *Carolina Casualty Insurance Co.* v. *Belford Trucking Co., Inc.* (N.J.Super.Ct.App.Div. 1972) 298 A.2d 288, and *Southern Home Insurance Co.* v. *Burdette's Leasing Service, Inc.* (1977) 268 S.C. 472 [234 S.E.2d 870], each held self-insurance certificates of owners of motor vehicles were "other collectible insurance" subject to priority of coverage clauses of the commercial insurance policies at issue. Although California historically followed a different rule (see *Metro U.S. Services, Inc.* v. *City of Los Angeles* (1979) 96 Cal.App.3d 678, 683 [158 Cal.Rptr. 207] [City's self-insured retention pool was not "insurance" subject to a commercial insurance policy's "other insurance" clause because the Insurance Code differentiated self-insurers from insurers and holders of insurance policies, self-insurance was not a contract of indemnity, and "the cases have uniformly held that the obligations arising from a policy of insurance do not extend to a self-insurer."]; accord, *Pacific Intermountain Express* v. *National Union Fire Ins. Co.* (1984) 151 Cal.App.3d 777, 780 [198 Cal.Rptr. 897]; *Western Pioneer Ins. Co.* v. *Estate of Taira* (1982) 136 Cal.App.3d 174, 179 [185 Cal.Rptr. 887]; *O'Sullivan* v. *Salvation Army* (1978) 85 Cal.App.3d 58, 62 [147 Cal.Rptr. 729]; *Glens Falls Ins. Co.* v. *Consolidated Freightways* (1966) 242 Cal.App.2d 774, 785 [51 Cal.Rptr. 789]), in 1980 the Legislature enacted Insurance Code section 11580.9, subdivision (g), which specifically provides a certificate of automobile self-insurance "shall be considered a policy of automobile insurance" for the purpose of establishing the priority of coverage. (*Pacific Intermountain Express* v. *National Union Fire Ins. Co., supra*, 151 Cal.App.3d at p. 781; see *Grand Rent A Car Corp.* v. *20th Century Ins. Co.* (1994) 25 Cal.App.4th 1242 [31 Cal.Rptr.2d 88].) But while the Legislature has specifically deemed automobile self-insurance to be insurance for priority of coverage, it does not follow a public entity self-insurance pooling agreement is subject to the same rule. Especially when the Legislature has specifically declared such an arrangement not to be insurance.[3]

---

[3]Because we conclude the ACWA-JPIA joint liability pool is not "other insurance" within the FIC policy, we need not consider what effect, if any, the underlying contract between OCWD and Beylik has in this case. The construction contract required all insurance to be primary and the certificate of insurance provided to OCWD contained a representation that all policies, including the FIC policy, were primary and no insurance of OCWD would be looked to to cover any loss. (See *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 634 [119 Cal.Rptr. 449, 532 P.2d 97] [Agreement between district and contractor required contractor's insurance be primary. Held, despite contractor's policy's "other insurance" clause, it was primary to district's own insurance because to apportion would "effectively negate the indemnity agreement and impose liability on [the district's insurer] when [the

## II

FIC next argues the ACWA-JPIA is in reality a "risk retention group" governed by the federal Liability Risk Retention Act (15 U.S.C. § 3901 et seq.) and the California Risk Retention Act (Ins. Code, § 125 et seq.), and section 990.8 has no applicability. We reject its argument for two reasons.

Preliminarily, neither the federal nor the state risk retention acts have any bearing on this case. Under both acts to qualify as a risk retention group the entity or association must be "chartered or licensed as a liability insurance company under the laws of a State and authorized to engage in the business of insurance under the laws of such State." (15 U.S.C. § 3901(4)(c); Ins. Code, § 130, subd. (k)(3).) The ACWA-JPIA is neither.

Additionally, FIC did not raise this issue below. We do not ordinarily consider new theories raised for the first time on appeal. (*Smith* v. *Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 629 [223 Cal.Rptr. 339].) FIC has offered no reason for us to exercise our discretion to do so here. (Cf. *Resolution Trust Corp.* v. *Winslow* (1992) 9 Cal.App.4th 1799, 1810 [12 Cal.Rptr.2d 510].)

## III

■ Finally, FIC contends the trial court abused its discretion in refusing to grant it a continuance of the hearing on the summary judgment motion so it could conduct discovery on the ACWA-JPIA member agencies' "intent" in drafting the JPA. (Code Civ. Proc., § 437c, subd. (h).) In brief, it argues that by using the term "insurance" in the JPA, the member agencies, including OCWD, evidenced their intent that the ACWA-JPIA be considered insurance. Therefore, they have waived the protections of section 990.8, specifying a joint liability pooling agreement is not insurance, and OCWD should be estopped to deny that the ACWA-JPIA is insurance.

The argument is without merit. The sine qua non of estoppel is that the party claiming it relied to its detriment on the conduct of the party to be estopped. (*Standard Oil Co.* v. *Feldstein* (1980) 105 Cal.App.3d 590, 607 [164 Cal.Rptr. 403].) FIC offered no evidence that it was even aware of, let alone saw or relied upon, the JPA in issuing its umbrella policy to Beylik. Furthermore, evidence of reliance is exclusively within the control of FIC and additional discovery was not necessary to produce it.

district] bargained with [the contractor] to avoid that very result as part of the consideration for the construction agreement."].)

The judgment is affirmed.

Sills, P. J., and Rylaarsdam, J., concurred.