Warren L. HOFFMAN, Appellant,

v.

YELLOW CAB COMPANY OF LOUISVILLE, Appellee.

No. 1999–SC–0600–DG.

Supreme Court of Kentucky.

Sept. 27, 2001.

Brian E. Clare, Louisville, Counsel for Appellant.

Armer H. Mahan, Jr., Petersen Thomas, Lynch, Cox, Gilman & Mahan, PSC, Louisville, Counsel for Appellee.

COOPER, Justice.

The issue presented by this case is whether a self-insured owner of a motor vehicle is required to pay uninsured motorist (UM) benefits to an occupant of the self-insured vehicle injured by the negligence of an uninsured motorist. The Jefferson Circuit Court held that the self-insurer was liable to the occupant for UM benefits. The Court of Appeals reversed. We granted discretionary review and now affirm the Court of Appeals.

Appellant Warren L. Hoffman leased a taxicab from Yellow Cab Company of Louisville. The lease agreement is not in the record and it is unknown if it contained any provision with respect to insurance; thus, we assume it did not. Hoffman testified he paid Yellow Cab $81.00 per day, plus the cost of gasoline, to lease the vehicle, and that he retained all income generated by his use of the vehicle. The vehicle was self-insured by Yellow Cab up to $60,000.00 for "public liability, property damage and cargo claims and losses." In

addition, Yellow Cab had procured an excess fleet insurance policy from Paratransit Risk Retention Group of Maryland, Inc., that provided coverage for liability claims in excess of $50,000.00. Yellow Cab, through its appropriate officer, had executed and filed a written rejection of uninsured motorist (UM) coverage offered under the Paratransit policy. KRS 304.20–020(1). Hoffman had no personal liability insurance and had executed and filed a written rejection of his right to "no-fault benefits." KRS 304.39–060(4), (5).

On June 4, 1994, Hoffman was injured and the taxicab damaged in a collision with an uninsured motorist. Yellow Cab filed suit against the uninsured motorist to recover for the property damage to its vehicle. Hoffman filed an intervening complaint against Yellow Cab to recover personal injury damages under the UM statute, KRS 304.20–020(1). The uninsured motorist proved to be insolvent. The trial judge granted Hoffman a summary judgment on his UM claim against Yellow Cab and submitted the issue of damages to a jury. Pursuant to the jury's verdict, Hoffman was awarded judgment against Yellow Cab in the sum of $16,975.63.

■ Hoffman's theory is that UM coverage is mandated by statute, *ergo,* a self-insured is liable for that coverage the same as if it had procured a liability insurance policy. Our UM statute, KRS 304.20–020(1), provides:

*No automobile liability or motor vehicle liability policy of insurance* insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle *shall be delivered or issued for delivery in this state* with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in KRS 304.39–110 under provisions approved by the commissioner, for the protection of persons insured thereunder *who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* because of bodily injury, sickness or disease, including death, resulting therefrom; *provided that the named insured shall have the right to reject in writing such coverage;* and provided further that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer. (Emphasis added.)

Thus, by its terms, the statute applies only to policies of liability insurance ... delivered or issued for delivery in this state ... unless the named insured has rejected UM coverage in writing. The only policy of insurance in this case was Paratransit's excess policy, and its named insured, Yellow Cab, had rejected the UM coverage of that policy in writing. Thus, if Yellow Cab had not been partially self-insured and Paratransit's policy had provided coverage for Yellow Cab's full liability, not just its liability in excess of $50,000.00, Yellow Cab's written rejection of Paratransit's UM coverage would be conclusive of Hoffman's UM claim. Hoffman, however, asserts that a certificate of self-insurance, even partial self-insurance, is a substitute for a policy of insurance, and that a self-insurer must provide the same coverages and benefits that are required in policies of insurance, including UM coverage; and that Yellow Cab rejected only the UM coverage in Paratransit's excess policy, not the UM coverage which

it was required to provide as a self-insured.

■■■■ As a general proposition, a self-insured is not subject to statutes regulating insurance companies. *Cf. Davidson v. American Freightways, Inc.,* Ky., 25 S.W.3d 94, 98 (2000). A certificate or authorization of self-insurance does not *ipso facto* convert the owner of a self-insured vehicle into an insurance company. "The certificate merely shows that [the owner] had produced evidence of financial responsibility." *Reeves v. Wright & Taylor,* 310 Ky. 470, 220 S.W.2d 1007, 1010 (1949). Whatever liability is imposed upon a self-insurer must be imposed either by the order or certificate of self-insurance or by the statute authorizing the issuance of that order or certificate. Yellow Cab's status as a partial self-insurer was granted by an order of the Department of Vehicle Regulation pursuant to KRS 281.655. This statute provides, *inter alia,* that no permit shall be issued to any commercial carrier unless proof of insurance or a security bond in the amount specified by the statute for that type of carrier has been filed with the Department of Vehicle Regulation. KRS 281.655(12) provides:

> *The minimum amounts of insurance* to be carried on each taxicab shall be liability coverage of not less than twenty-five thousand dollars ($25,000) for all damages arising out of bodily injury sustained by any one (1) person, and not less than fifty thousand dollars ($50,000) for all damages arising out of bodily injury sustained by all persons injured as a result of any one (1) accident, plus liability coverage of not less than ten thousand dollars ($10,000) for all damages arising out of damage to or destruction of property, including the loss of use thereof, as a result of any one (1) accident arising out of ownership, main-

tenance, use, loading, or unloading of the insured vehicle. (Emphasis added.)

KRS 281.655(11) authorizes the department to exempt an applicant from the policy or bond requirement upon proof of financial ability to pay "all damages for which he may become liable as a result of the operation of any vehicle owned by him or operated under authority of his certificate or permit." Obviously, "all damages for which he may become liable" refers to tort liability, not contractual liability. UM benefits are payable under a policy of insurance for damages that the insured is "legally entitled to recover" from an uninsured motorist. KRS 304.20–020(1). This means that the insurer is liable under the UM coverage of its policy only if the uninsured motorist is liable in tort to the person insured by the policy. *Phillips v. Robinson,* Ky.App., 548 S.W.2d 511, 513 (1976), *reversed on other grounds. Robinson v. Murlin Phillips & MFA Ins. Co.,* Ky., 557 S.W.2d 202 (1977). The order that approved Yellow Cab's self-insurance application recites:

> NOW THEREFORE, it is hereby ordered that the applicant: Yellow Cab Company of Louisville, be authorized to act as a partial self-insurer up to the first sixty thousand dollars ($60,000) of its responsibility for public liability, property damage and cargo claims and losses asserted against them as a motor common carrier operating under the jurisdictions of the Department subject to those terms and conditions herein above set forth.

Thus, the order authorized Yellow Cab to be partially self-insured for tort liability up to $60,000.00. Both the order and the enabling statute required Yellow Cab to be financially responsible for its own tortious conduct. Neither the order nor the statute required it to be financially responsible

for the tortious conduct of an uninsured motorist.

Hoffman argues that UM liability is imposed upon all self-insurers by the Motor Vehicle Reparations Act (MVRA), subtitle 39 of the Kentucky Insurance Code, specifically KRS 304.39–080. That statute requires every owner of a motor vehicle (except an agency of the state or national government) to provide "by a contract of insurance or by qualifying as a self-insurer, security for the payment of basic reparation benefits [BRB] in accordance with this subtitle [1] and security for payment of tort liabilities,[2] arising from the maintenance or use of the motor vehicle." KRS 304.39–080(5). By its terms, this provision applies only to basic reparation benefits (BRB) and tort liability coverage, not UM coverage. KRS 304.39–080(7) provides:

> Self-insurance, subject to approval of the commissioner of insurance, is effected by filing with the commissioner in satisfactory form:
>
> (a) A continuing undertaking by the owner or other appropriate person to pay tort liabilities or basic reparation benefits, or both, *and to perform all other obligations imposed by this subtitle;*
>
> (b) Evidence that appropriate provision exists for prompt and efficient administration of all claims, benefits, and obligations *provided by this subtitle;* and
>
> (c) Evidence that reliable financial arrangements, deposits, or commitments exist providing assurance, *substantially equivalent to that afforded by a policy of insurance, complying with this subtitle,* for

payment of tort liabilities, basic reparation benefits, *and all other obligations imposed by this subtitle.* (Emphasis added.)

The statute does not mandate UM coverage. The UM statute, KRS 304.20–020, is not a part of subtitle 39 of the Insurance Code, but of subtitle 20, and thus does not fall within the "all other obligations imposed by this subtitle" language of subsections (a), (b) and (c); and the "substantially equivalent" clause in subsection (c) applies only to a policy of insurance providing coverages required by "this subtitle," *i.e.,* subtitle 39. Hoffman posits that since UM coverage, like BRB coverage, is mandatory unless rejected by the insured, it should be treated as if it were part of subtitle 39. That position, however, directly contradicts the General Assembly's stated intent in the introductory section to the Insurance Code "that each subtitle retain its separate identification within Chapter 304 of the Kentucky Revised Statutes." KRS 304.1–010. Furthermore, Yellow Cab's status as a partial self-insurer was authorized not under KRS 304.39–080(7), but under KRS 281.655(11). The latter statute contains an identical requirement as the MVRA with respect to tort liability coverage, but does not mention liability for BRB. We need not address here whether the MVRA would require Yellow Cab to be liable for BRB payments as a matter of law, because Hoffman rejected his entitlement to basic reparation benefits. KRS 304.39–060(4) and (5).

Virtually all of the jurisdictions that have held that a certificate or authorization of self-insurance includes UM cover-

---

1. $10,000 per person, pursuant to KRS 304.39–020(2).

2. Minimum of either split limits of $25,000 per person, $50,000 per accident, $10,000 property damage, or single limits of $60,000 per accident, pursuant to KRS 304.39–110(1)(a).

age have mandatory UM statutes containing no right of rejection. *E.g., Hartford Ins. Co. v. Hertz Corp.,* 410 Mass. 279, 572 N.E.2d 1 (1991); *Anderson v. Northwestern Bell Tel. Co.,* 443 N.W.2d 546 (Minn. Ct.App.1989); *Heavens v. Laclede Gas Co.,* 755 S.W.2d 331 (Mo.Ct.App.1988), *after remand,* 809 S.W.2d 162 (Mo.Ct.App. 1991); *Crocker v. Transp. of New Jersey,* 169 N.J.Super. 498, 404 A.2d 1293 (1979); *Allstate Ins. Co. v. Shaw,* 52 N.Y.2d 818, 436 N.Y.S.2d 873, 418 N.E.2d 388 (1980); *Modesta v. Southeastern Pennsylvania Transp. Auth.,* 503 Pa. 437, 469 A.2d 1019 (1983). A few jurisdictions have statutes specifically requiring that a certificate of self-insurance must provide protection against uninsured motorists. *E.g.,* La. Rev.Stat. Ann. § 22:1406D(3); Va.Code Ann. § 46.2–368B. Virtually all of the jurisdictions that have held that a self-insured is not liable for UM benefits have UM statutes containing "opt out" provisions (although some rely on the statutory prerequisite that there be a "policy of insurance"). *E.g., O'Sullivan v. Salvation Army,* 85 Cal.App.3d 58, 147 Cal.Rptr. 729 (1978); *White v. Regional Transp. Dist.,* 735 P.2d 218 (Colo.App.1987); *City of Gary v. Allstate Ins. Co.,* 612 N.E.2d 115 (Ind.1993); *disapproved on other grounds, United Nat'l Ins. Co. v. DePrizio,* 705 N.E.2d 455 (Ind.1999); *Grange Mut. Cas. Co. v. Refiners Transp. & Terminal Corp.,* 21 Ohio St.3d 47, 487 N.E.2d 310, 312 (1986) ("it would result in the absurd 'situation where one has the right to reject an offer of insurance to one's self' "); *McSorley v. Hertz Corp.,* 885 P.2d 1343 (Okla. 1994); *American States Ins. Co. v. Utah Transit Auth.,* 699 P.2d 1210, 1212 (Utah 1985) ("[a] self-insurer cannot offer insurance to itself, nor can it reject the insurance so tendered. A certificate of self-insurance is not really insurance or a policy of insurance; it is simply an assurance that judgments will be paid.").

Even some states without "opt out" provisions in their UM statutes, but with statutory language otherwise similar to that in KRS 304.20–020(1), have held that UM coverage does not apply to a self-insurer because the existence of a "policy of insurance" is a statutory prerequisite to UM coverage. *E.g., Mountain States Tel. & Tel. Co. v. Aetna Cas. & Sur. Co.,* 116 Ariz. 225, 568 P.2d 1123 (1977); *Hill v. Catholic Charities,* 118 Ill.App.3d 488, 74 Ill.Dec. 153, 455 N.E.2d 183 (1983); *Ellis v. Rhode Island Pub. Transit Auth.,* 586 A.2d 1055 (R.I.1991).

■ In summary, Yellow Cab was not required to provide Hoffman with protection against injuries caused by an uninsured motorist. Yellow Cab rejected UM coverage under its excess policy with Paratransit; and, with respect to its status as a self-insured, there is neither a policy of insurance as prerequired by KRS 304.20–020(1) nor any language in either the enabling statute or the order authorizing Yellow Cab's status as a partial self-insurer requiring it to provide UM coverage. To read that requirement into the law under the pretext of public policy would be to impose a greater burden on a self-insured than is imposed on the named insured of an insurance policy. The named insured under a policy of insurance can "opt out" of UM coverage by executing a written rejection, as Yellow Cab did with respect to the UM coverage offered in Paratransit's excess insurance policy; but under Hoffman's theory, UM coverage by a self-insured would be mandatory. The establishment of public policy is the prerogative of the General Assembly, *Commonwealth ex rel. Cowan v. Wilkinson,* Ky., 828 S.W.2d 610, 614 (1992); and, to date, the General Assembly has not deemed it appropriate to require self-insurers to provide UM coverage for occupants of self-insured vehicles.

Accordingly, the decision of the Court of Appeals is affirmed.

GRAVES, JOHNSTONE, KELLER and STUMBO, JJ., concur.

LAMBERT, C.J., dissents by separate opinion, with WINTERSHEIMER, J., joining that dissenting opinion.

LAMBERT, Chief Justice, dissenting.

I respectfully dissent. A statutorily compliant self-insurance plan is merely a permissible substitute for a mandatory automobile insurance policy. Thus, once Yellow Cab made the decision to become a self-insured, it was required to take on the same responsibilities of complying with the law as would an insurance company. One of those responsibilities is to make available uninsured motorist coverage. KRS 304.49–080.

With a self-insured, the need to vigorously enforce the law with respect to making uninsured motorist coverage available is even greater than with owners of private vehicles. The owner of a private vehicle would be presumed to want uninsured motorist coverage to protect family members and friends injured by uninsured motorists. Under the majority's result here, any incentive for a corporation that owns a fleet of vehicles to purchase uninsured coverage is destroyed. Thus, a primary goal of UM coverage has been defeated by this apparent loophole created for the "self-insured."

WINTERSHEIMER, J., joins this dissenting opinion.