RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0229p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ASSOCIATED INDUSTRIES OF KENTUCKY, INC.,
*Plaintiff-Appellant*,

*v.*

No. 07-5662

UNITED STATES LIABILITY INSURANCE GROUP,
*Defendant-Appellee*.

>

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 05-00270—Charles R. Simpson, III, District Judge.

Argued: March 11, 2008

Decided and Filed: June 27, 2008

Before: SILER, MOORE, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** R. Kent Westberry, LANDRUM & SHOUSE, LLP, Louisville, Kentucky, for Appellant. Michael R. McDonner, O'BRYAN, BROWN & TONER, PLLC, Louisville, Kentucky, for Appellee. **ON BRIEF:** R. Kent Westberry, Jennifer A. Peterson, LANDRUM & SHOUSE, LLP, Louisville, Kentucky, for Appellant. Michael R. McDonner, Andrew N. Clooney, O'BRYAN, BROWN & TONER, PLLC, Louisville, Kentucky, for Appellee.

---

## OPINION

---

SILER, Circuit Judge. Plaintiff Associated Industries of Kentucky ("AIK") appeals the grant of summary judgment in favor of defendant United States Liability Insurance Group ("U.S. Liability"). AIK sought a declaratory judgment ruling that U.S. Liability had a duty to defend AIK against several lawsuits in state court and a duty to cover any liabilities that might arise from the lawsuits. The district court held that U.S. Liability had no duty to defend AIK from the lawsuits, which arose from the operation of AIK's group self-insurance fund, AIK Comp. A contractual provision stated that U.S. Liability had no duty to defend AIK against lawsuits arising out of the operation of "any insurance plan or program." We agree with the district court that AIK Comp is

1

an insurance program covered by the contractual exclusion provision and that U.S. Liability does not have a duty to defend AIK from the lawsuits in state court. Therefore, we AFFIRM.

**BACKGROUND**

AIK is a trade association that represents business and industry in Kentucky. It offers a variety of services to its members, and it serves as the sponsoring trade association for AIK Comp, a group self-insurance fund operated pursuant to Ky. Rev. Stat. § 342.250 et seq. Kentucky authorizes self-insurance funds to serve as a vehicle for participants to pool their liabilities for workers' compensation benefits. A self-insurance fund operates the same way that any other insurer would- it collects premiums from employers in exchange for assuming their workers' compensation liabilities. However, a self-insurance fund differs from a typical insurer in one aspect. If the self-insurance fund cannot meet its obligations, each participant remains jointly and severally liable for the fund's outstanding liabilities.

In April 2004, AIK Comp notified the Kentucky Office of Workers' Claims that an audit of its loss reserves revealed that it understated its necessary reserves by a wide margin. AIK Comp had an initial deficit of $40 million, but the deficit now stands at over $90 million. To cover the deficit, AIK Comp charged additional assessments to its participants. Several AIK Comp participants refused to pay the additional assessments. Participants brought four related lawsuits in state court against AIK. The lawsuits alleged that AIK controlled and administered AIK Comp in a fraudulent and negligent manner. Specifically, the participants alleged that AIK set the AIK Comp premiums at artificially low levels to entice more participants to join the fund, thus creating the widening deficit. Three of the lawsuits have since been consolidated into a new class action with reformulated claims.

After the participants brought the lawsuits, AIK turned to its insurer, U.S. Liability, to defend the lawsuits and to cover the liabilities. U.S. Liability insured AIK and had a duty to defend AIK from lawsuits, but there was an exclusion provision for any claims resulting from the offering or administration of any insurance plan or program. The exclusion provision read:

> In consideration of the premium paid, it is agreed that the Company shall not be liable to make any payment for Loss or Defense Costs in connection with any Claim made against any Insured based upon, arising out of, directly or indirectly resulting from, in consequence of, the offering or administration of any insurance plan or program.

Asserting this contractual exclusion provision, U.S. Liability refused to defend AIK against the participants' lawsuits.

In response, AIK sought a declaratory judgment from the district court, arguing that U.S. Liability had a duty to defend it and to indemnify it. The district court granted summary judgment in favor of U.S. Liability, holding that AIK Comp was an insurance program, so the exclusion applied and U.S. Liability had no duty to defend AIK from the lawsuits.

**ANALYSIS**

We review de novo a district court's grant of summary judgment. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). In doing so, we apply the law of Kentucky in this diversity action. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In Kentucky, insurance contract interpretation is a matter of law. *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. Ct. App. 2000) (citing *Morganfield Nat. Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992)). An insurance company must defend its insured if the underlying allegations "potentially" or "possibly" bring the action within the scope of the insurance contract. *James Graham Brown Found., Inc. v.*

*St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991). The terms of insurance contracts "have no technical meaning in law" and we interpret them "according to the usage of the average man and as they would be read and understood by him." *Id.* Kentucky employers are required to obtain workers' compensation insurance. Ky. Rev. Stat. § 342.630. However, certain large or financially capable employers are allowed to self-insure. 803 Ky. Admin. Regs. 25:021.

AIK's sole argument is that U.S. Liability must defend it from the state court lawsuits because "AIK Comp is not 'insurance' within the ordinary meaning of the term." AIK claims that AIK Comp is not an "insurance plan or program" covered by the contractual exclusion provision because AIK Comp is self-insurance and the participants remain jointly and severally liable for any liabilities that AIK Comp cannot cover. We do not find this argument persuasive and we do not think the Supreme Court of Kentucky would adopt this reasoning. While there is a difference between group self-insurance and what might be called traditional insurance, the AIK Comp group self-insurance fund offered "insurance" as defined by Kentucky law because the fund shifted risks.

Kentucky law defines insurance, in relevant part, as "a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils called 'risks.'" Ky. Rev. Stat. § 304.1-030. Individual self-insurance means that an entity bears all of its own risks and purchases no insurance at all. Therefore, individual self-insurance is not "insurance" within the meaning of Kentucky law because it does not involve "a contract whereby one undertakes to pay or indemnify *another* as to loss from . . . 'risks.'" *Id.* (emphasis added). Unsurprisingly, AIK points to several decisions from other states holding that individual self-insurance is not insurance because it does not involve the shifting of risk to another. *See, e.g., Bowens v. Gen. Motors Corp.*, 608 So. 2d 999, 1003 (La. 1992) ("This court has held that 'self-insurance is, in actuality, not insurance at all'"); *Am. Nurses Ass'n v. Passiac Gen. Hosp.*, 471 A.2d 66, 69 (N.J. Super. Ct. App. Div. 1984) ("so-called self-insurance is not insurance at all"). However, AIK Comp does not offer individual self-insurance. Instead, AIK Comp is a group self-insurer that pools the risks of numerous participants. Unlike an individual self-insured, group self-insurance participants shift their risks to another, the group self-insurance fund.

AIK points to *Hoffman v. Yellow Cab Co. of Louisville*, 57 S.W.3d 257 (Ky. 2001), and *Reeves v. Wright & Taylor*, 220 S.W.2d 1007 (Ky. 1949), for the proposition that all self-insurance is not insurance. In *Hoffman*, the Supreme Court of Kentucky held that Kentucky's law governing automobile insurers does not apply to individual self-insurers. 57 S.W.3d at 259-61 (rejecting argument that self-insured is liable for uninsured motorist benefits the same as if it had procured a liability insurance policy). Similarly, in *Reeves*, the Supreme Court of Kentucky held that a lessor of automobiles is not engaged in the insurance business when he procures a certificate of self-insurance in lieu of a liability insurance policy. 220 S.W.2d at 1010. *Hoffman* and *Reeves* are distinguishable because both cases involved businesses that individually self-insured over the amount of the relevant claim and retained the risk of loss without shifting any relevant risks to another. Although individual self-insurance is not insurance within the meaning of Ky. Rev. Stat. § 304.1-030, AIK Comp is group self-insurance, not individual self-insurance. The Supreme Court of Kentucky has not addressed the question of whether a self-insured group that pools risks provides "insurance" to its members.

AIK argues that AIK Comp is not insurance because the participants do not transfer all of their risks to the fund. Instead, they remain jointly and severally liable for any shortfalls the fund may suffer. Thus, AIK contends, AIK Comp does not provide insurance but merely serves as a vehicle for members to pool risks to a limited degree. In support of its argument, AIK cites *Iowa Contractors Workers' Comp. Group v. Iowa Ins. Guar. Ass'n*, 437 N.W.2d 909 (Iowa 1989). There, a group self-insurance fund for contractors secured excess coverage to hedge against the risk of an unexpectedly large number of workers' compensation claims. *Id.* at 911. The fund later paid out a large number of claims and its excess coverage insurer became insolvent. *Id.* at 912. In search

of relief, the fund turned to the Iowa Insurance Guaranty Association, a state-created entity that protected insureds from insurer insolvency. *Id.* However, Iowa law prevented "insurers" from recovering from the Guaranty Association. *Id.* at 915. The Guaranty Association denied the fund's claim, reasoning that the fund was an insurer. *Id.* The Supreme Court of Iowa disagreed, finding that the workers' compensation group self-insurance fund fell outside the narrow statutory definition of an insurer. *Id.* at 915-16. The joint and several liability of the fund's participants meant that the participants retained some of the risk, distinguishing the arrangement from traditional insurance. *Id.* at 916. "While it is true that the Group does assume some risk, it does not assume all of the risks" because of the joint and several liability provision. *Id.* at 917. The group self-insurance fund was not insurance because it involved risk distribution or risk spreading, not risk transfer. *Id.*

Other courts have rejected Iowa's reasoning. *See Md. Motor Truck Ass'n Workers' Comp. Self-Ins. Group v. Prop. & Cas. Ins. Guar. Corp.*, 871 A.2d 590 (Md. 2005); *S.C. Prop. & Cas. Ins. Guar. Ass'n v. Carolinas Roofing & Sheet Metal Contractors Self-Ins. Fund*, 446 S.E.2d 422 (S.C. 1994). In the Maryland decision, the court held that a group self-insurance fund with a joint and several liability provision for participants similar to that of AIK Comp. was an insurer. *Md. Motor Truck Ass'n*, 871 A.2d at 598. Regarding group self-insurance:

> the retained risk is transferred from the individual (member) to the group and is spread throughout the group. The member may share with the other members joint and several liability for the overall, aggregate obligations of the group, but it is relieved of any direct obligation for payment of particular claims made against it. That is much more akin to the nature and concept of insurance than to that of non-insurance.

*Id.* at 595-96. The court rejected Iowa's distinction between risk transference and risk distribution. *Id.* at 598. Because all claims made against a participant were investigated, settled, litigated, and, if necessary, paid by the group self-insurer, not the participant, the group self-insurance fund fell within the definition of an insurer. *Id.*

Similarly, the Supreme Court of South Carolina held that a group self-insurance fund with a joint and several liability provision was an insurer because "there was a substantial transfer of risk." *S.C. Prop. & Cas. Ins. Guar. Ass'n*, 446 S.E.2d at 425.

> A single employer self-insured merely retains its own risk that an event will occur which will render it liable. Since insurance traditionally involves a transfer of risk from one entity to another, it is conceptually difficult to consider a single employer self-insured an insurer. In contrast, the members of a group self-insurer such as Roofers Fund *transfer* a portion of their risk to the group, and in turn *assume* a risk that belongs to the other members of the group.

*Id.* (internal citations omitted) (emphasis in original).

We find the reasoning of the Iowa court unpersuasive and we do not think Kentucky would follow it. Instead, we think the Supreme Court of Kentucky would follow the reasoning of the courts in Maryland and South Carolina. Group self-insurance with a joint and several liability provision involves the shifting of risks to the fund, and, in the case of insolvency, among the participants. While the participants may not shift their collective risks to an unrelated outside third party as typically occurs in a traditional insurance contract, they shift their risks to the fund. If the group self-insurance fund becomes insolvent, the risk from an individual participant is shifted to other participants because of the indemnity agreement. The indemnity agreement does not somehow shift the individual risk of each individual participant and only that risk back to that individual participant. Instead, the entire group is responsible for the collective liabilities of each individual

participant, and this arrangement is still risk shifting among participants. This risk shifting means that AIK Comp offered insurance as defined by Ky. Rev. Stat. § 304.1-030.

AIK Comp offered insurance because it involved risk shifting from the participants to the fund, and, in case of fund insolvency, among the participants. U.S. Liability does not have a duty to defend AIK from any lawsuits arising from the offering of an insurance program due to the contractual exclusion provision.

AFFIRMED.