# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 13, 2013 Session

## DENNIS MICHAEL HARRIS, ET UX. v. MICKEY DEANNE HAYNES, ET AL.

**Appeal from the Circuit Court for Anderson County**
**No. BOLA0333      Donald R. Elledge, Judge**

---

**No. E2012-02213-COA-R3-CV-FILED-JULY 10, 2013**

---

This appeal concerns whether certain exclusions in a coverage document are permissible. Dennis Michael Harris ("Harris"), then a patrolman with the Anderson County Sheriff's Department, was injured when he was struck by a vehicle driven by Mickey Deanne Haynes ("Haynes"). Harris and his wife, Judy A. Harris, (collectively, "the Plaintiffs") sued Haynes and the alleged owner of the vehicle, Richard H. Furrow, in the Circuit Court for Anderson County ("the Trial Court"). The Plaintiffs also raised claims against Anderson County's motor vehicle liability coverage provider, Tennessee Risk Management Trust ("TRMT"), for uninsured or underinsured motorist coverage. TRMT filed a motion for summary judgment, arguing that under the relevant coverage document ("the Coverage Document"), Harris was excluded from uninsured coverage as he was an employee of Anderson County who had received workers compensation. The Trial Court granted TRMT's motion. The Plaintiffs appeal. We hold that Anderson County was self-insured through TRMT, and, therefore, the uninsured/underinsured motorist statutes do not apply. The Coverage Document excluded employees such as Harris from uninsured coverage. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

David A. Stuart, Clinton, Tennessee, for the appellants, Dennis Michael Harris and Judy A. Harris.

Jonathan Swann Taylor, Knoxville, Tennessee, for the appellee, Tennessee Risk Management Trust.

## OPINION

## Background

The material facts of this appeal are undisputed. On August 15, 2009, Harris was working as a patrolman for the Anderson County Sheriff's Department when he was assigned to assist traffic control at the scene of a vehicular collision in Anderson County, Tennessee. While attending to his duty at the scene of the collision, Harris was struck by a pickup truck driven by Haynes and suffered personal injuries. Pursuant to the Coverage Document issued by TRMT to Anderson County, Harris received workers compensation benefits for the injuries he sustained in this incident. In October 2009, Harris returned to work with the Anderson County Sheriff's Department. In March 2011, Harris was promoted to investigator.

The Coverage Document was issued by TRMT to Anderson County after the Operations Committee of the Anderson County Board of Commissioners approved a motion that sent out a request for proposals for County liability, property casualty, and workers compensation insurance. On April 20, 2009, the Anderson County Board of Commissioners renewed a one year contract with TRMT. Section III, Paragraph C of the Coverage Document provides:

> Liability for bodily injury to non-employees and other casual occupants of owned vehicles other than drivers or operators is afforded in respect of any **CLAIM** not to exceed the limits set forth in the Tennessee Tort Liability Act, if applicable, or the limit set forth in the **SCHEDULE OF LIMITS**, regardless of the number of claimants in any one **OCCURRENCE**. A **CLAIM** for such coverage may be made to **TNRMT** only after all other applicable coverage is exhausted and only for the amounts allowed by the Tennessee Tort Liability Act inclusive of any recovery from any other coverage available. This coverage shall not apply to employees, agents or contractors acting on behalf of the **MEMBER** or to any injury covered by Workers Compensation law. The intent of this coverage is to apply to vehicle occupants only, excluding drivers. If coverage is afforded under this section (Automobile Liability paragraph C), then coverage under Auto Liability paragraph "A" does not apply.

Section III's exclusions provide that coverage under Section III does not insure against:

> Any obligation for which the **MEMBER** may be held liable under any

Worker's Compensation, disability benefits law, employers liability or under any similar law or to **BODILY INJURY** to any employee or to any liability for indemnity or contribution brought by any party for **BODILY INJURY** to any employee.

The parties also agree as to certain facts regarding the history and nature of TRMT. TRMT was created in 1987 by local school boards and other public entities in Tennessee pursuant to the Interlocal Cooperation Act, Tenn. Code Ann. § 12-9-101, *et seq*. TRMT provides liability, workers compensation, and property coverage to more than 200 governmental entities and schools in Tennessee. TRMT is similar to an insurance company in that it collects premiums, provides coverage and loss control, and pays claims. TRMT, however, asserts that it is not an insurance company. TRMT asserts that it allows governmental entities and school systems to come together as one to share risks and losses. Members receive customized coverage, rates and services, and avoid underwriting cycles experienced with traditional carriers.

We next review the relevant procedural history in this case. The Plaintiffs filed their complaint in July 2010. The Plaintiffs sued Haynes, the driver of the vehicle, and Richard H. Furrow, the vehicle's owner, alleging negligence and vicarious liability claims, and asserting injuries to Harris stemming from the incident. TRMT was involved in the case as the county's vehicle liability carrier. TRMT filed an answer in opposition. TRMT also filed a motion for summary judgment in March 2012.

In August 2012, the Trial Court entered an order granting summary judgment to TRMT. In its oral ruling, the Trial Court explained its reasoning:

[I]t's clear that this is strictly a contract case as it pertains to whether or not this is insurance, and as it pertains to whether or not Tennessee Risk Management Trust should have provided uninsured motorist insurance for the Plaintiff in this case. It is further clear, totally clear, no question of fact that on or about January 12, 2009, the subcommittee of Anderson County approved their liability coverage. And on April 20, 2009, they approved and renewed their contract with Risk Management Trust. The Court finds that Risk Management Trust is an entity created under TCA 29-20-401, et seq. It's a governmental pool. There is no question it's a government pool as it addresses liability.

\*\*\*

And under the self-insurance provisions of TCA 29-20-401, because

-3-

he is an employee of the insured and because he was covered by workers' compensation insurance, and this Court so finds, then the Tennessee Risk Management does not have to defend Mickey Deanne Haynes; is not liable for damages because it's specifically excluded. And there's no question of fact that Anderson County is in the risk management pool. There's no question of fact that they provide their own coverage. They pool to limit their liability. There's no question of fact when Anderson County met, that they accepted the contract, and they rejected uninsured motorist coverage for an employee, which Mr. Harris was, or for someone covered by insurance. It's also a matter of law that a governmental entity acts through its minutes, and its minutes reflect that. That's it. A governmental entity acts through its minutes, and its minutes reflect that. And that's what they accepted; that's what they rejected. And unfortunately for Mr. Harris, that's what we have in this case. (format modified)

In October 2012, the Trial Court entered judgment in favor of the Plaintiffs against Haynes in the amount of $1,000,000 for Harris and $250,000 for his wife. Harris appeals to this Court.

## Discussion

Though not stated exactly as such, the Plaintiffs raise one issue on appeal: whether the Trial Court erred in granting summary judgment to TRMT.

Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).
>
> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the

summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009). Issues involving the scope of coverage present questions of law, which may be resolved by summary judgment if the facts are undisputed. *Victoria Ins. Co. v. Hawkins*, 31 S.W.3d 578, 580 (Tenn. Ct. App. 2000). Here, the material facts are undisputed.

Initially, it is useful to review portions of the law governing self-insurance pools for trusts such as TRMT:

(a) Any governmental entity may create and maintain a reserve or special fund for the purpose of making payment of claims against it payable pursuant to this chapter or for the purpose of purchasing liability insurance to protect it from any and all risks created by this chapter.

(b)(1) Any two (2) or more governmental entities are hereby granted the power, any provision of law to the contrary notwithstanding, to enter into an agreement or agreements with one another for joint or cooperative action to pool their financial and administrative resources for the purpose of providing to the participating governmental entities risk management, insurance, reinsurance, which is defined to mean reinsurance by an entity created under this section, self-insurance, or any combination thereof for any and all of the areas of liability or insurability, or both, for such governmental entities, including, but not limited to, the liabilities created by this chapter (including general and professional liabilities), liabilities under the workers' compensation law, liabilities under the unemployment compensation law, and motor vehicle insurance. All such agreements shall be made pursuant to title 12, chapter 9.

\*\*\*

(c)(1) Any governmental entity choosing to create and maintain a special fund, or to enter into an agreement, as authorized in this section for the purpose of insuring against the liabilities created by this chapter, shall be deemed to be electing to self-insure against the liabilities established in this chapter and shall, therefore, have the same limits of liability as if the minimum limits of liability established in § 29-20-403 had been purchased.

\*\*\*

(d)(1) No special fund established by an agreement authorized under this section and under title 12, chapter 9, shall be considered as an "insurance company" nor shall any contribution of financial or administrative resources to such a special fund be considered a "premium" or "gross premium" under title 56 for any purpose, including regulation and taxation.

Tenn. Code Ann. § 29-20-401 (2012).

The Plaintiffs argue that Anderson County and TRMT were required to comply with the uninsured/underinsured motorist statutes at Tenn. Code Ann. § 56-7-1201, *et seq*.,

and that they failed to do so. TRMT, for its part, contends that the uninsured/underinsured motorist statutes are inapplicable. TRMT points to the case of *Maines v. Hill*, 190 F.Supp.2d 1072 (W.D. Tenn. 2002) as persuasive authority. In *Maines*, the plaintiffs were injured in a vehicular collision. *Id.* at 1071. The *Maines* court held:

> Under Tennessee law, "[e]very automobile liability insurance policy delivered, issued for delivery or renewed in this state ... shall include uninsured motorist coverage ..." Tenn. Code Ann. § 56-7-1201(a). The State permits a named insured, however, to reject in writing such coverage completely or to select lower limits of such coverage. Tenn. Code Ann. § 56-7-1201(a)(2).

> In this case, Carriers was insured by a general commercial liability insurance policy issued by The Insurance Company of the State of Pennsylvania. Although Carriers was given the option of accepting UM coverage, it rejected such coverage in writing. It is clear, therefore, that Carriers validly rejected UM coverage under the insurance policy issued by The Insurance Company of the State of Pennsylvania.

> Plaintiffs argue that even if the Court finds the rejection of UM coverage under that policy to be valid, Plaintiff Maines was not bound by that rejection. Specifically, Plaintiffs point to a Contract Hauling Agreement, and assert that in order to bind Plaintiff Maines by contract, Carriers needed to have specifically provided authority.

> The Court need not address the terms of the Hauling Agreement because Plaintiffs' argument is incorrect under Tennessee law. "Any document signed by the named insured or legal representative which initially rejects [uninsured motorist coverage] shall be binding upon every insured to whom such policy applies ..." Tenn. Code Ann. § 56-7-1201(a)(2). In construing this section of the Tennessee Code, the Supreme Court of Tennessee determined that the "rights of an additional or omnibus insured can rise no higher than, but are clearly controlled by, the choices and selections of coverage made by the named insured ..." *Burns v. Aetna Casualty & Surety Co.,* 741 S.W.2d 318, 323 (Tenn. 1987). Therefore, despite Plaintiffs' protestations to the contrary, Plaintiff Maines, as an additional or omnibus insured of the named insurer, Carriers, was bound by Carriers' rejection of UM coverage under the insurance policy issued by The Insurance Company of the State of Pennsylvania.

> Carriers argues next that it is not required to provide UM coverage with respect to its self-insured retention. Under Tennessee law, as was set forth

above, every "automobile liability insurance policy" issued in the State must provide UM coverage. Tenn. Code. Ann. § 56-7-1201(a). The insurance policy issued by The Insurance Company of the State of Pennsylvania provided coverage for liability claims in excess of one million dollars ($1,000,000), while Carriers had a self-insured retention of up to one million dollars ($1,000,000) per occurrence. The issue is whether the self-insured retention held by Carriers is an automobile liability insurance policy, making it subject to the provisions of Section 56-7-1201 of the Tennessee Code.

Unfortunately, no Tennessee court has addressed the issue of whether a self-insured retention is subject to the UM coverage requirement set forth in Section 56-7-1201 of the Tennessee Code. Carriers cites decisions from numerous other jurisdictions with similar statutory language as persuasive authority for its contention that a self-insured retention is not governed by Section 56-7-1201. The majority of those decisions hold that self insurance is not an "automobile liability insurance policy." *See e.g. O'Sullivan v. Salvation Army*, 85 Cal.App.3d 58, 147 Cal.Rptr. 729, 731-32 (1978); *Hoffman v. Yellow Cab Co. of Louisville*, 57 S.W.3d 257, 261 (Ky. 2001); *Grange Mutual Cas. Co. v. Refiners Transp. & Terminal Corp.,* 21 Ohio St.3d 47, 487 N.E.2d 310, 313-14 (1986). The Court is persuaded by the reasoning set forth in those decisions. The Court is also persuaded by Carriers' assertion that the legal definition of self insurance does not fit within the definition of a "contract of insurance" or "motor vehicle liability policy" as set forth in the Tennessee Code. *See* Blacks' Law Dictionary at 806 (6th ed.1991); *c.f.* Tenn. Code Ann. §§ 56-7-101(a), 55-12-202(7). Moreover, "To read [a rejection requirement] into the law under the pretext of public policy would be to impose a greater burden on a self-insured than is imposed on the named insured of an insurance policy." *Hoffman*, 57 S.W.3d at 261.

The Court therefore determines that Carriers' one million dollar ($1,000,000) self-insured retention is not subject to Section 56-7-1201 of the Tennessee Code. As a result, Carriers was not obligated under Tennessee law to provide UM coverage as part of its self-insured retention. With respect to Tennessee, Carriers did not possess any UM coverage under any insurance policy.

*Maines*, 190 F.Supp.2d at 1075-76 (some citations omitted). We find the reasoning in *Maines* to be sound when the court held that the "UM coverage requirement set forth in Section 56-7-1201 of the Tennessee Code..." does not apply in a self-insured situation. *Id.*

TRMT has been described in a Tennessee Attorney General's Opinion as follows:

> The Trust was created through an interlocal agreement of school boards under Tenn. Code Ann. § 12-9-104. It was formed to create and operate a self-insurance pool for school systems under the authority of the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-401. The risk pool allowed members to share risk as an alternative to purchasing commercial insurance policies. At some point, coverage was expanded to include county government and public utilities in Tennessee in addition to school systems. According to information available to this Office, the Trust is an intergovernmental agency that provides claims management, loss control services and insurance coverage to school systems, county government and public utilities in Tennessee.

Tenn. Op. Atty. Gen. No. 06-066, 2006 WL 1197460 (April 11, 2006).

TRMT is a risk pool. As the statutes authorizing the creation and existence of TRMT provide, TRMT is not an insurance company, and it would be incorrect to treat it as such for legal purposes. Further, the statute provides that because Anderson County has chosen to participate in TRMT, it is deemed to be self-insured. We hold, as did the Trial Court, that the uninsured/underinsured statutes simply do not apply in this self-insurance situation. Anderson County decided to reject uninsured/underinsured motorist coverage though its adoption of the Coverage Document. Arguing further, the Plaintiffs raise a provision of the Coverage Document which provides that should the terms of the document conflict with any Tennessee statutes, the terms are amended to conform with the statutes. However, for the reasons already discussed, the terms of the Coverage Document do not conflict with Tennessee law. The very statutes governing the existence of TRMT, Tenn. Code Ann. § 29-20-401, *et seq.*, control. The statutes specifically provide that TRMT may not be considered an insurance company. The statutes further provide that Anderson County, having chosen to participate in TRMT, "shall be deemed to be electing to self-insure...." Tenn. Code Ann. § 29-20-401 (c)(1) (2012). There is no conflict between any terms of the Coverage Document and the Tennessee uninsured/underinsured statutes.

We, therefore, must look to the pertinent terms of the Coverage Document to determine whether coverage extended to Harris under the Coverage Document. The Coverage Document provides that "coverage shall not apply to employees, agents or contractors acting on behalf of the **MEMBER** or to any injury covered by Workers Compensation law." Our Supreme Court has stated regarding contract interpretation:

When we interpret a contract, our role is to ascertain the intention of the parties. The intention of the parties is based on the ordinary meaning of the language contained within the four corners of the contract. The interpretation of a contract is a matter of law, which we review de novo with no presumption of correctness.

*84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011) (citations omitted). According to the plain terms of the Coverage Document, Harris, an employee acting on behalf of Anderson County and who received workers compensation benefits, is not covered.

To reiterate, TRMT is not an insurance company. Rather, Anderson County is deemed to be self-insured, and the uninsured/underinsured statutes are not applicable to or in conflict with the Coverage Document. The question of whether Anderson County should provide uninsured/underinsured motorist coverage to its employees, such as Harris, is a policy decision to be decided by the legislative body of Anderson County and not this Court. The Anderson County legislative body made that policy decision, and it is not the role of this Court to second guess that policy decision. With no material facts in dispute, TRMT is entitled to judgment as a matter of law. We affirm the judgment of the Trial Court in its entirety.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Dennis Michael Harris and Judy A. Harris, and their surety, if any.

_____
D. MICHAEL SWINEY, JUDGE

-10-